SIMS et al. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. December 16, 1919.)

No. 5299.

1. UNITED STATES ⟨≠⟩73—IN ACTION FOR BREACH OF CONTRACT FOR BUILDING LEVEE, THAT GOVERNMENT INTERFERED WITH WORK A VALID DEFENSE.

In an action by the United States against a contractor for building a Mississippi levee for failure to complete the contract, an answer *held* to state a defense which alleged that during an unprecedented flood, when the levee was in part completed, plaintiff took possession of it to the exclusion of defendant, and by attempting to close a gap therein for temporary protection of lands behind caused the completed part to be washed away, when, if left in possession, defendant would, by protecting the ends and leaving the gap open, have saved it, and that plaintiff afterwards required defendant to rebuild the part destroyed at his own expense as a condition of resuming work.

2. UNITED STATES ⟨≠⟩70(1)—LEVEE BUILDING CONTRACT REQUIREMENT THAT CONTRACTOR MAKE ALL REPAIRS BEFORE ACCEPTANCE NOT APPLICABLE TO PART DESTROYED BY GOVERNMENT OFFICER'S ACTS.

Provisions of a government contract for building a levee that damage or injury to any part of the work before acceptance should be repaired by the contractor at his expense *held* not to require him to rebuild at his expense parts destroyed by flood and caused by acts of the government officer, who had, without warrant in the contract, taken temporary possession and excluded the contractor.

In Error to the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Action at law by the United States against John B. Sims, administrator of the estate of J. B. Lewis, deceased, and others. Judgment for the United States, and defendants bring error. Reversed.

See, also, 237 Fed. 80, 150 C. C. A. 282.

⟨≠⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Charles T. Coleman and R. E. Wiley, both of Little Rock, Ark., and Thomas H. Jackson, Matt M. Neil, and James L. McRee, all of Memphis, Tenn., for plaintiffs in error.

W. H. Martin, U. S. Atty., of Hot Springs, Ark., and W. H. Rector, Asst. U. S. Atty., of Little Rock, Ark.

Before CARLAND and STONE, Circuit Judges, and ELLIOTT, District Judge.

STONE, Circuit Judge. This is an action by the United States against the administrator of a contractor and the sureties upon a bond given to secure the performance of a contract to build a portion of a levee along the Mississippi river. To a joint second amended answer the government filed a demurrer, upon the ground that the answer was insufficient to constitute any defense, set-off, or counterclaim. The demurrer was sustained, and defendants declined to plead further, electing to stand upon their answer. After evidence of the amount of loss claimed by the government, judgment was entered in its favor for $35,683.42, against the administrator, and for the penalty of the bond, $10,500, against the sureties. From this judgment, defendants bring this writ of error.

This case was in this court (237 Fed. 80, 150 C. C. A. 282) on a previous writ of error, and the record in that writ is made part of this writ by stipulation.

[1] The petition declared upon the bond and contract which were made parts of the petition. After the case returned to the trial court, the answer was amended once by filing a second amended answer, the one here involved, which is as follows:

"By leave of the court first had and obtained, now come the defendants and for their second amendment to their answer state:

"Defendant J. B. Lewis entered upon the performance of the contract, by building the levee into the end of the old levee and extending it towards the other side of the gap, where it was intended to tie the newly constructed levee into the end of the old levee there, and thus close the gap, so that, as defendant's work proceeded, it was a complete levee of the size and character provided in the contract, to the point where defendant was at a given time engaged at work upon its construction.

"Defendant had so constructed said levee up to station 692, and was at work on that station in January, 1913, when the flood came in the river and inundated the lands. Plaintiff, through its authorized officials and without defendant's permission, took possession of all of defendant's work and the premises on which the work was to be constructed, not because of any default of the defendants in the performance of the contract, but for the purpose of using the same in making a high-water fight to protect the country adjacent and on the land side of the levee from inundation by the threatened flood.

"The flood rise in January and in February did not destroy defendant's levee. After the flood had partially subsided, the plaintiff, waiving the time limit named in the contract for the completion of the work, on March 3, 1913, granted defendant Lewis permission to proceed with the performance of the contract within a reasonable time thereafter, and returned to defendant Lewis the possession of the work which he had done and the premises for that purpose, and he continued performance of the contract in the manner already described, and completed all of the work covered by the contract, except a small section of the levee, when further prosecution and the completion of the work by defendant Lewis was prevented by the plaintiff, who then and there

forcibly took possession and control of the levee, which had been so partially completed, and of all of the premises on which the construction of the levee had been and was to be built, and excluded defendant therefrom. Plaintiff so took over said work and premises, not because of any default of defendant under said contract, but for the purpose of using said work and premises for plaintiff's own benefit and purposes; that is to say, for the purpose of making a high-water fight against the overflow of the lands behind the levee by the flood of the Mississippi river, and for the purpose of using said work and premises to protect the country adjacent thereto from an unprecedented flood from overflow of the river which was threatened. Plaintiff thereafter kept possession of said work and premises, to the exclusion of the defendants, and used the same for the purposes aforesaid, until all of the levee which the defendant Lewis had constructed under his contract was totally washed away and destroyed by the flood of March and April, 1913.

"The levee which defendant Lewis had constructed under the contract was destroyed by reason of the act of the plaintiff in using it for flood protection before it had been fully completed and the gap closed. Plaintiff, for the purpose of protecting the country from inundation by the flood, endeavored to stop the flood flowing through the gap at the end of the partially completed levee by erecting a temporary and partial levee across the gap, but was unable to build the levee across the gap high enough or strong enough, before the flood came against it, to withstand the flood, but was able to build it high enough to raise the water on the river side of the levee and hold it there much higher than its level on the land side, and so as to cause, and which did cause, said flood, when it broke through the gap, to wash away and destroy the levee which defendant Lewis had constructed; whereas it would not have been so washed away and destroyed, except for plaintiff's acts in taking the levee from defendant and preventing him from protecting it at the end, and in temporarily filling the gap with a levee insufficient to hold the flood. The act of plaintiff in thus using defendant's work and premises was the cause of the defendant's work being destroyed, and prevented him from performing his contract.

"If the plaintiff had not taken said levee and premises away from the possession of the defendant Lewis, he could and would have protected the end of the levee at the gap by riprap work and other protective work, so that his levee would not have been washed away or injured by the gradual rise and flow of the flood through the gap, had the gap been left open, as it would have been left by him, if the plaintiff had not taken possession of the premises away from him.

"After the destruction of the levee by defendant Lewis, as aforesaid, the plaintiff offered to permit the defendant Lewis to complete performance of his contract, but upon the condition that he replace and reconstruct, at his own expense, the levee which he had built under the contract, and which had been so destroyed by said flood, and the plaintiff would not permit said defendant to enter upon or complete said contract, otherwise than upon that condition."

The issues here presented can be more conveniently considered by discussing the contentions urged by the government in support of the demurrer. These are (1) that the last (second amended) answer is the same in substance as the answer (first amended) involved in the former writ of error; (2) that the former decision of this court, resulting in the sustaining of a demurrer to that answer, is the law of the case, and conclusive as to the sufficiency of the answer here in question; (3) that if the above positions are not well taken, yet the government had a right to take possession of the work, even to the complete exclusion of the contractor, under the terms of the contract which is part of the petition in the case.

The first inquiry is as to the claimed identity of the answer in the

former writ of error, and that here involved. The original answer pleaded that the government, in January, 1913, took possession of the levee works and excluded the contractor, which acts were claimed to abrogate the contract; that shortly afterwards, when the contractor returned to the work and was borrowing earth from the land side of the levee works, because the river side borrow pits were water-filled, the government wrongfully required him to cease such borrowing, and to borrow earth from the river side of the levee works, thus excusing the contractor from compliance; that in March, 1913, during a flood, the government again took exclusive possession of the works, during which time the works were washed away, and therefore the contractor was not responsible, but was excused for the damage thus occurring. Later an "Amendment to Answer" was filed, wherein defendants pleaded that there could be no recovery, because (1) the refusal of the government to permit the contractor to proceed, unless he reconstructed the portion of the works washed away by the last above flood, was a violation of the contract; and (2) because that damage was due to an act of God, and not to any negligence or fault of the contractor. In some respects the second amendment to the answer is merely an amplification of matters in the original answer and the first amendment, but there is one difference. In the former pleadings, defendants sought to excuse for liability for the loss of the levee, because it had occurred without their fault or negligence, while in exclusive possession of the government. The language of the answer is:

"Defendants say that on or about the 25th day of March, 1913, the flood from the river again inundated the land on which said levee was located; that on or about said date plaintiff, through its agents, again took charge of said levee, to the exclusion of defendant, and was in such charge thereof on the date of the crevasse therein.

"Defendants say that by reason of said act of plaintiff in taking sole and exclusive control of said levee he was released from all duty of protecting same from damage by said flood, and that he is not responsible therefor.

"Defendants deny that they are liable to plaintiff for the sums paid Lowreance & Co., because they say that the contracts awarded said Lowreance & Co. cover other and additional work than that covered by the contract of defendant Lewis."

The first amendment then alleged that a refusal to permit the contractor to proceed until he had made good such loss was a violation of the contract. On the other hand, the second amendment pleads, that, if the contractor had been permitted to keep possession of the works during the flood, he could and would have protected and saved the levee works by riprapping the end, leaving the gap open, and by other protective measures; whereas, the government, having as its main purpose preservation of the lands back of the levee from flood, and not the preservation of the levee works, devoted its efforts to endeavoring to prevent the flood waters from flowing through the uncompleted gap between the old levee and the new works, by erecting a temporary and partial levee across this gap, but succeeded only in building the temporary works high enough to increase the height of the water on the river side, so that, when the water finally broke through the gap, it washed away the entire new levee, because of its greater height thus

produced; that the new levee would not have been washed away, "except for plaintiff's acts in taking the levee from defendant and preventing him from protecting it at the end, and in temporarily filling the gap with a levee insufficient to hold the flood"; that thereafter to refuse to permit the contractor to proceed, unless he reconstructed the levee works so destroyed, was an abrogation of the contract. While, in each instance, defendants pleaded the refusal to permit prosecution of the work unless the lost works were reconstructed as constituting an abrogation of the contract, yet the facts and theory upon which such conclusion was based were different; in the one instance being simply that, as the loss had occurred while the works were in exclusive possession of the government, the contractor was excused therefor; in the other instance, being that the loss was occasioned by the direct acts of the government, while in exclusive possession, and that it could have been prevented, had the contractor been permitted to protect the works. In the first instance, the issue of fact tendered by the answer was whether the loss occurred while the government had exclusive possession of the works. The issue of law was whether, if the loss had so occurred, the contractor was liable, under the contract, to make it good by reconstruction. In the second instance, the issues of fact were whether the government, while in possession, had so acted as to cause the loss, and whether the contractor, had he not been excluded, could have prevented the loss. The issue of law was, if the loss was so caused, or it could have been so prevented, whether the contractor was, under the contract, obligated to make it good by reconstruction. The conclusion is, therefore, that the answers involved in the former writ of error and in this are not the same.

The above conclusion obviates any necessity of examination of the former decision of this court, beyond stating that the opinion contains nothing bearing upon the situation presented by the second amendment to the answer.

[2] There remains the inquiry as to whether the government was entitled to take possession of the contractor's works during flood time, exclude him therefrom, conduct its flood protective measures for the protection of the lands back of the levee in the manner deemed by it most effective for that purpose, and to hold the contractor liable for the loss of the new levee occurring under such circumstances. Whatever might be the rights of the government, as a sovereignty, to take such property or measures as it deemed fit for the protection of property and lives from flood waters of a navigable stream, there can be no question that it has no right, solely because of its sovereignty, to require private parties to make good losses caused by the method employed by it to control such waters. The contention of the government is that the terms of the contract gave it the right, in flood time, to take such exclusive possession, and obligated the contractor to make good any destruction of his work caused by flood waters. Counsel for the government designate certain portions of the contract upon which they base this contention. Those portions are as follows:

"If the contractor shall delay or fail to commence with the delivery of the material and performance of the work as specified herein, or shall in the

judgment of the contracting officer fail to prosecute faithfully and diligently the work in accordance with the specifications and requirements of this contract, then, in either case, the contracting officer shall have power, with sanction of the Chief of Engineers, to annul this contract by giving notice in writing to that effect to the contractor, and upon giving of such notice all payments to the contractor under this contract shall cease, and all money or reserved percentage due or to become due thereunder shall be retained by the United States until the final completion and acceptance of the work herein stipulated to be done; and the United States shall have the right to recover from the contractor whatever sums may be expended by the United States in completing the said contract in excess of the price herein stipulated to be paid the contractor for completing the same, and also all costs of inspection and superintendence, including all necessary traveling expenses connected therewith, incurred by the United States in excess of those payable by the said United States during the period herein allowed for the completion of the contract by the contractor, and the contracting officer may deduct all the above-mentioned sums out of or from the money or reserved percentage retained as aforesaid; and upon the giving of the said notice the contracting officer shall be authorized to proceed to secure the performance of the work or delivery of the materials, by contract or otherwise, in accordance with law." Paragraph 5 of "General Instructions to Bidders."

"Until final inspection and acceptance of, and payment for, all of the material and work herein provided for, no prior inspection, payment, or act is to be construed as a waiver of the rights of the contracting officer to reject any defective work or material or to require the fulfillment of any of the terms of the contract." Paragraph 10 of "General Instructions to Bidders."

"12. *Superintendence.*—The contractor must at all times either be personally present upon the work or be represented thereon by a responsible agent, who shall be clothed with full authority to act for him in all cases, and to carry out any instructions relative to the work which may be given by the contracting officer, either personally or through an authorized representative." Paragraph 12 of the Specifications.

"17. *Acceptance of Work.*—Continuous lengths of levee of one thousand (1,000) linear feet will be accepted by the contracting officer, when fully and completely finished, except timber felling. The intention of this paragraph is that, in case of damage or destruction of such lengths as have been accepted, such loss falls upon the United States, and not upon the contractor. It is to be understood that portions of the levee upon which payments have been made, but which have not been accepted as herein provided, shall, if damaged or destroyed, be repaired or replaced by the contractor at his own expense. Retained percentage upon accepted work will not be paid to the contractor until the satisfactory completion and final acceptance of the entire contract." Paragraph 17 of the Specifications.

"26. *Working Force.*—If, at any time after the date fixed for beginning work, it shall be found that operations, in the opinion of the contracting officer, are not being carried on at a rate which will enable the work to be completed within the time stipulated in the contract, the contracting officer shall have the power, after due notice in writing to the contractor, to employ such additional plant or labor and to purchase such material as may be necessary to insure the proper completion of the work within the time specified, and any excess cost thereof over what the work would have cost at the contract rate shall become a charge against any sums due or to become due the contractor. This provision, however, shall not be construed to affect the right of the United States to annul the contract." Paragraph 26 of the Specifications.

"45. *Damage or Injury to Work.*—In anticipation of destructive floods during the progress of the work, the contracting officer may require a protection of timber or other material to be constructed around the ends of the levee or elsewhere, and also a temporary protective levee to be built in front of the work, upon such location and of such dimensions as he may direct. If a protective levee is built, the contractor will be paid the contract price per cubic yard; for other protective work he will be paid the actual cost plus 10 per cent. All damage or injury to work, resulting from floods or other causes be-

fore the work has been received by the contracting officer, shall be sustained by the contractor." Paragraph 45 of the Specifications.

The claim as to paragraph 5 of the General Instructions to Bidders is that it authorizes the contracting officer to annul the contract at any time he was of the opinion that the contractor was failing to prosecute faithfully and diligently the work in accordance with the terms of the contract, and that this was exactly what was alleged to have been done by the contracting officer in this instance. Clearly this power of determination, vested by this paragraph in the contracting officer, was not so unlimited as to permit him to modify the terms of the contract and impose upon the contractor, as conditions of further prosecution of the work, burdens not contemplated by the contract. If the contractor was able and willing to continue the work, and was prevented solely by the contracting officer, who refused to permit him to continue unless he would rebuild the destroyed work, the contracting officer would have no right, under this paragraph, to abrogate the contract, because the contractor refused to accept that condition unless, under the contract and the controlling facts, the officer had a right to impose such a condition. If there was a right to impose such condition, it does not appear in this paragraph.

The claim as to paragraph 10 of the General Instructions to Bidders is that, taken in connection with paragraph 12 of the Specifications, relating to superintendence and supervision, it furnishes complete authorization for the acts of the contracting officer, of which complaint is made, and which defendants claim released them from further liability. Obviously these provisions of the contract refer to the manner of doing the work called for by the contract, and have no reference to work not within its terms. If the contract required the reconstruction of the destroyed levee under the facts pleaded by defendants, then the contracting officer could properly instruct him to do such reconstruction—otherwise, he could not.

The claim as to paragraph 17 of the Specifications is that it, in connection with paragraph 45 of the specifications, explicitly provides that all damage or injuries to the work resulting from floods or other causes, before the work is received by the contracting officer, shall be sustained by the contractor. It is claimed, in addition, as to paragraph 45, that it authorizes—

"the contracting officer to take charge of the work in anticipation of destructive floods, and gave him the authority to make such a high water fight as he deems necessary; the interests of the contractor being safeguarded by a provision which remunerates him for the work done in connection with the high water fight."

The third sentence of paragraph 17 and the closing sentence of paragraph 45 are broad in their terms. It was decided by this court, when this case was here before (237 Fed. 80, 150 C. C. A. 282), that this would include providential disasters, such as floods. But these terms are not broad enough to include losses occasioned by the government through its method of flood fighting while in possession of the new levee, and while preventing the contractor from protecting his

work. Nor is there any authority in either or both paragraphs authorizing the contracting officer to take possession of the new levee and exclude the contractor for any purpose. Paragraph 45 does empower the contracting officer to require the contractor to construct certain protective works to shield the end and sides of the new levee in case of flood. This work is to be done by the contractor, and its sole purpose is the protection and preservation of the levee being constructed. Here the plea is that the contractor was forcibly excluded from the work and entirely prevented from protecting the new levee, while the government took possession with the purpose of protecting the lands back of the levee, and not only took no steps to protect the levee, but, on the contrary, in its endeavor to save the lands back of the levee, pursued a method which resulted in the destruction of the new levee. We find no authority for such action in these paragraphs. The compensation provided in paragraph 45 has no application to flood damage, or to a turning over of the works to the contracting officer in flood time. It covers solely the cost of extra work, "a temporary protective levee," when such is required by the contracting officer to be erected by the contractor to protect from floods the levee being constructed.

The claim as to paragraph 26 of the Specifications is that it authorizes the contracting officer to enter upon the work for the purpose of increasing the working forces, if he deem the force employed by the contractor to be insufficient. The effect claimed for this paragraph may be conceded, but its application to this controversy is not apparent.

Counsel for the government have selected those portions of the contract most favorable to their contentions, but such portions contain no warrant for the actions of the contracting officer as pleaded in this second amendment to the answer. The demurrer thereto should have been overruled.

The judgment is reversed, and the case remanded for proceedings not inconsistent with this opinion.